FILED
2022 MAR 24
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MELISA K., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING ALJ DECISION <br><br><br><br> Case No. 2:20-cv-00799-CMR <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiff Melisa K. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claims for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act) (ECF 23, Plaintiff's Opening Brief (Pl. Br.)).  The court finds that oral argument is not necessary and will decide this matter on the basis of written memoranda.  *See* DUCivR 7-1(g).  After careful review of the entire record, the parties' briefs, and relevant authority, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED.

### I.   STANDARD OF REVIEW

The scope of the court's review of the Commissioner's final decision is specific and narrow.  As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).  The threshold for evidentiary sufficiency under the substantial evidence standard is "not high."  *Id.* at 1154.  Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Under this deferential standard, this court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).  If the evidence is susceptible to multiple interpretations, the court "may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanksi v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  A court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the court views the evidence as "equivocal."  *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

## II.  BACKGROUND

Plaintiff was 34 years old on her disability onset date of August 5, 2017 (Certified Administrative Transcript (Tr.) 20, 103, 121).  She applied for DIB and SSI in 2018, alleging disability due to ankylosing spondylitis, rheumatoid arthritis, scoliosis, depressive disorder, and paresthesia (*see* Tr. 104, 122).  The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims (Tr. 7–26).  *See* 20 C.F.R. § 404.1520(a)(4).[1]  In a decision dated July 1, 2020, the ALJ determined at step two that Plaintiff had severe impairments of diffuse myalgias and neuralgias, anxiety, and depression (Tr. 13).  At step three, the ALJ considered Plaintiff's mental impairments under Listings 12.04 and 12.06 and paragraph B and C criteria, finding none were satisfied (Tr. 13–14).  The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work with additional physical and mental limitations

---

[1] Unless otherwise noted, references to the Code of Federal Regulations (C.F.R.) are to the 2020 edition of 20 C.F.R. Part 404, which governed Title II claims when the ALJ rendered his decision in this case.  Part 416 of 20 C.F.R., which governs Title XVI claims, are substantively the same but not cited herein.

2

(Tr. 14-19). *See id*. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations."). The ALJ found at step five that this RFC would allow Plaintiff to perform other work existing in significant numbers in the national economy (Tr. 20–21). The ALJ thus concluded that Plaintiff was not disabled (Tr. 21). *See id*. § 404.1520(a)(4)(v). The Appeals Council then denied Plaintiff's request for review (Tr. 1–6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981, 422.210(a). This appeal followed.

### III.   DISCUSSION

**A.   Substantial evidence supports the ALJ's evaluation of the medical evidence.**

Plaintiff argues that the ALJ erred in his evaluation of medical sources including consultative specialists Drs. L. Lynn Morrill, Gopi Penmetsa, and James White, and treating provider Dr. Brian Gardner (Pl. Br. at 17–24). Because Plaintiff applied for benefits after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations (*see* Tr. 10 (noting application date), 18–19). *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). In particular, the revised regulations eliminate any hierarchy among the sources offering medical opinions and give no deference to any opinion, even those from the claimant's own doctor. *See* 20 C.F.R. § 404.1520c(a) (2017). Instead, the adjudicator considers the persuasiveness of opinion evidence utilizing the factors outlined in the regulations. *See id.* "The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability [and] consistency." *Id.* Subject to one exception that is not applicable to the present case, an ALJ is only required to address the supportability and consistency factors in articulating his reasoning.

*See* 20 C.F.R. § 404.1520c(b)(2), (3). The court will address the ALJ's evaluation of each medical source in turn.

### 1. Dr. Morrill

Plaintiff asserts that the ALJ erred in finding that Dr. Morrill's opinion was unpersuasive (*see* Pl. Br. 21–27). Plaintiff saw Dr. Morrill for a disability evaluation in February 2019 (Tr. 1783–85). On examination, Dr. Morrill indicated Plaintiff was "somewhat dramatic in her presentation" (Tr. 1784). Dr. Morrill noted Plaintiff had some mild restriction and stiffness in range of motion of her hips (*Id.*). She had some evidence of deconditioning in generalized hand strength—however, Dr. Morrill indicated that "it appears [Plaintiff] is not giving a full maximal effort with strength testing" (*Id.*). Her spine range of motion was very limited, but Dr. Morrill again questioned whether Plaintiff was giving maximal effort (Tr. 1785). Plaintiff's gait was "stiff, sore, and mincing" (*Id.*). A couple months after the consultative examination, Plaintiff began seeing Dr. Morrill for treatment *(see, e.g.*, Tr. 1998). In April 2020, Dr. Morrill completed a questionnaire indicating that Plaintiff experienced moderate pain and could sit for only 10 minutes at one time for a total of zero hours in a workday and stand for zero minutes at one time for a total of zero hours in a workday (Tr. 3496–97). Dr. Morrill further indicated that Plaintiff could lift zero pounds on even an occasional basis (Tr. 3496).

The ALJ found Dr. Morrill's opinion "for a total inability to sit, stand, or work at all" was unpersuasive (Tr. 18). The ALJ explained that the extreme limitations identified by Dr. Morrill were not supported by explanation or rationale within the checkbox-form questionnaire he had completed (*Id.*). *See* 20 C.F.R. § 404.1520c(c)(1) (supportability). As the ALJ highlighted, Dr. Morrill stated on the form that Plaintiff "had moderate pain, yet could not sit, stand, or work any hours per day" (*Id.*). Indeed, the checkbox form offered five options as to Plaintiff's level of

4

pain: "None," "Mild," "Moderate," "Severe," or "Extreme" (Tr. 3497). The ALJ further explained that Dr. Morrill's own examination findings did not support his opined limitations (Tr. 18). *See* 20 C.F.R. § 404.1520c(c)(1) (explaining that the supportability factor looks to the evidence from and explanation by the opining source).

Turning to the consistency factor, the ALJ explained that the extreme limitations opined by Dr. Morrill were inconsistent with the medical records in general, which noted minimal objective findings despite very significant subjective complaints from Plaintiff (Tr. 18). *See* 20 C.F.R. § 404.1520c(c)(2) (explaining that the consistency factor looks to evidence from sources other than the opining source). As the ALJ explained earlier in his decision, the medical records were "replete with notes about exaggerated pain behavior and possible symptom exaggeration" (Tr. 17). The ALJ cited to four examples. In June 2019, Dr. Goldston noted that Plaintiff "literally startles/jumps with mild palpation of her spine processes," had "exaggerated pain behavior" on palpation of her sacroiliac joints, and exhibited "excessive pain behavior without identifiable correlating pathology" (Tr. 17, 3544). Dr. Goldston documented "give-way" weakness[2] and, as to her gait, "[Plaintiff] says she is in too much pain to try to stand or walk" (Tr. 3544). He noted that Plaintiff reported the majority of her pain was in her low back and the next worse would be the legs, "[h]owever her intake pain drawing today shows pain everywhere throughout her body, head, neck, arms, chest, abdomen, upper and lower back and front and back of both legs and feet" (Tr. 3541, 3550; *see also* Tr. 3570). In October 2019, Dr. Buchanan stated that he suspected "embellishment or somatization, as her subjective exam findings are not consistent with her objective exam findings" (Tr. 17, 3060). In May 2020, Dr. Gardner stated

---

[2] Give-way weakness can be a sign that the patient is trying to deceive the doctor by feigning true muscle weakness. *Simila v. Astrue*, 573 F.3d 503, 518–19 (7th Cir. 2009); *see also Gerard v. Astrue*, 406 F. App'x 229, 232 (9th Cir. 2010) ("Give-way weakness" is a self-limiting behavior, which may "support a negative credibility determination.").

that "[t]oday on exam, she had pains out of proportion with touch" and found it difficult to localize any particular symptoms (Tr. 17, 3506).

The ALJ's characterization of the record as "replete" with notes of symptom exaggeration is supported not only by the examples he cited, but by a multitude of other notes. In May 2018, Plaintiff reported her heart races after walking ten steps, and Dr. Wheeler noted that "[Plaintiff] does have a lot of complaints, she really seems to never feel good unfortunately" and that (Tr. 1217).  In July 2018, Plaintiff reported dizziness and vertigo, stating that it feels like her chest is getting shocked and her heart will not beat (Tr. 783 (Plaintiff reporting her pulse would go to 176 after doing five jumping jacks)).  She said this occurred almost every day, but it did not happen when she was wearing a heart monitor (*Id.*).  Also in July 2018, Nurse Trotter indicated that Plaintiff's "symptoms seems [sic] to jump around again when I questioned her" (Tr. 736).  In November 2018, Plaintiff reported "[i]t feels like I'm being stung by a thousand bees" when describing her pain (Tr. 1199).[3]

Plaintiff correctly argues that checkbox forms have never been disallowed (Pl. Br. 25). However, the ALJ did not find Dr. Morrill's opinion unpersuasive merely because it was in a checkbox format.  Rather, the ALJ was explaining that the checkbox form did not provide a rationale in support of the extreme opined limitations.  *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (check-the-box style evaluation forms, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence).  Indeed, Dr. Morrill indicated that Plaintiff had "Moderate" pain—not "Severe" or even "Extreme" pain (Tr. 3497).  Dr. Morrill did

---

[3] This evidence supports the ALJ's articulated rationale.  The ALJ is not required to cite each and every instance that the evidence supports his rationale.  As another district court has explained,
> The question for the court is whether substantial record evidence supports the agency's rationale, and therefore it is appropriate for agency counsel to point out record evidence which supports that rationale and for the court to rely upon such evidence in the record even if that particular evidence was not cited in the decision.

*Murray v. Berryhill*, No. 17-1086-JWL, 2018 WL 2159788, at *3 (D. Kan. May 10, 2018).

6

not explain why "Moderate" pain would cause Plaintiff to be limited to zero hours of standing and zero hours of sitting in a workday.  In determining that the prior administrative medical findings of the state agency medical consultants were persuasive—a finding that Plaintiff does not challenge—the ALJ explained the doctors had supported their findings "with adequate rationale with references to the medical record" (*see* Tr. 19).  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  The ALJ reasonably found Dr. Morrill's extreme limitations unpersuasive in light of the absence of supporting evidence or explanation.

Plaintiff further argues that the ALJ should have recontacted Dr. Morrill (*see* Pl. Br. 25–27).  An ALJ has discretion to recontact a medical source where evidence in the claimant's record is inconsistent or insufficient such that a decision on disability cannot be determined.  *See* 20 C.F.R. § 404.1520b(b)(2)(i).  Such was not the case here.  The ALJ considered the entire record and determined a decision could be made.  *Cf. White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002) (the ALJ's duty to develop the record further is triggered by the inadequacy of the evidence received).

Finally, Plaintiff takes issue with the ALJ's consideration of the record evidence reflecting that providers documented Plaintiff's dramatic or exaggerated presentation (*see* Pl. Br. 24-25).  Ultimately this argument is tantamount to inviting the court to adopt another interpretation of the record evidence.  The ALJ's interpretation of the longitudinal evidence is reasonable given that it is supported by substantial evidence of record.  As outlined above in detail, far more than a mere scintilla of evidence supports the ALJ's reading of the record and the

court therefore rejects Plaintiff's alternative reading of the evidence. *See Lax*, 489 F.3d at 1084 (the court does not displace the ALJ's choice between "two fairly conflicting views").

### 2. Dr. Penmetsa

Plaintiff also challenges the ALJ's finding that Dr. Penmetsa's opinion was unpersuasive (Pl. Br. 23–24). At Dr. Morrill's referral, Plaintiff saw rheumatologist Dr. Penmetsa for a consultative evaluation in March 2019 (Tr. 2014–18). Plaintiff endorsed "diffuse sharp electrical pain radiating from her neck down the entire spine into her pelvis" (Tr. 2017). She said she was unable to walk more than 20 feet due to worsening of the pain (*Id.*). On examination, Plaintiff had diffuse tenderness over the entire spine and multiple myofascial tender points (*Id.*). Dr. Penmetsa found that Plaintiff did not have any clinical evidence of inflammatory arthritis on examination and her old imaging did not demonstrate any findings of ankylosing spondylitis[4] (Tr. 2018). Imaging of her low spine the next month showed a congenitally narrow canal in her low back with a mild disc bulge one vertebrae level (Tr. 3554). Imaging of her mid-spine was normal (Tr. 3556). Dr. Penmetsa explained to Plaintiff that the imaging showed no evidence of ankylosing spondylitis (Tr. 3562). In May 2020, Dr. Penmetsa completed a questionnaire (Tr. 3578). Dr. Penmetsa indicated that Plaintiff could only work two hours per day, while also indicating Plaintiff could sit for a total of four hours per workday (Tr. 3578). He also indicated Plaintiff had multiple other exertional limitations (Tr. 3578).

The ALJ found that Dr. Penmetsa's opinion was not persuasive (Tr. 19). The ALJ explained that Dr. Penmetsa offered no supporting rationale in his checkbox-form questionnaire (Tr. 19). The ALJ further explained the opined limitations were not supported by Dr. Penmetsa's

---

[4] Ankylosing spondylitis is an inflammatory disease that, over time, can cause some of the small bones in the spine (vertebrae) to fuse.

8

own treatment notes, which reflected subjective complaints that were not supported by Plaintiff's objective presentation (Tr. 19, 3514, 3561). Indeed, except for diffuse tenderness and multiple myofascial tender points, Dr. Penmetsa documented an entirely normal physical examination (Tr. 3561). Given the significant exertional limitations opined by Dr. Penmetsa, a reasonable mind could have expected something more than diffuse tenderness on examination. *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted opinion where the physician's notes did not appear to be based on a physical examination and provided little analysis of the claimant's physical limitations).

Plaintiff argues that (1) Dr. Penmetsa did review imaging that showed degenerative disc disease at one vertebrae level and congenitally narrow canal in her low back; (2) checkbox forms have never been disallowed; and (3) Dr. Penmetsa's opinion was consistent with the opinions of Drs. Morrill, Gardner, and White (Pl. Br. 27–28). These arguments do not overcome the substantial evidence supporting the ALJ's findings. First, Plaintiff fails to connect the imaging showing a congenitally narrow low spine with one mild disc bulge to any specific functional limitations. The ALJ reasonably relied on the physical examinations. *See Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) ("[A]lthough the existence or severity of fibromyalgia may not be determinable by objective medical tests, this court has suggested that the physical limitations imposed by the condition's symptoms can be objectively analyzed."). Second, similar to Dr. Morrill's opinion, the ALJ did not find Dr. Penmetsa's opinion unpersuasive because it was rendered via checkbox form—the ALJ found the opinion unpersuasive because the checkbox form lacked an explanation. *See Johnson v. Comm'r, SSA*, 764 F. App'x 754, 759–60 (10th Cir. 2019) ("Dr. Rutter did nothing more than check a box on an application for a handicapped placard. This is not the type of evidence on which to base a disability finding,

9

particularly in light of the fact that it is inconsistent with the *medical* evidence."). Third, given the ALJ's well-reasoned and supported findings with respect to the other medical opinion evidence of record, Plaintiff's asserted consistency between the multiple unsupported opinions of record does not make those opinions more persuasive.

### 3. Dr. Gardner

Plaintiff saw podiatrist Dr. Gardner, in May 2020 for complaints of pain and numbness in both feet (Tr. 3506). Dr. Gardner documented that, "[t]oday on exam, she had pains out of proportion with touch almost everywhere I touch on both the foot and ankle, so it was difficult to localize any particular symptoms" (*Id.*). He assessed fibromyalgia and "[p]ossible sciatica" (*Id.*). A day or two later, Dr. Gardner completed a questionnaire that indicated Plaintiff had problems walking, could only stand for 15 minutes at one time, and needed to elevate her legs "[m]ost of [t]ime" in an eight-hour workday (Tr. 3508–09). However, Dr. Gardner explained that he "d[id] not feel that there is a specific foot problem," and he attributed her pain to fibromyalgia and lower back issues (Tr. 3509).

The ALJ found Dr. Gardner's opinion was not persuasive (Tr. 19). The ALJ highlighted the lack of support, noting the opinion consisted of little more than a couple of circles on a questionnaire; Dr. Gardner stated Plaintiff's impairments were not a specific foot problem;[5] and Dr. Gardner's own contemporaneous treatment notes reflected that Plaintiff "had pains out of proportion with touch" and he found it difficult to localize any particular symptoms

---

[5] 7 Indeed, specialization is one factor relevant in considering persuasiveness of an opinion. *See* 20 C.F.R. § 404.1520c(c)(4) (specialization). Given that Dr. Gardner, a podiatrist, explicitly indicated Plaintiff did not have any foot-related impairments, his opined limitations were apparently based on conditions outside his specialization. *Cf.* 20 C.F.R. § 404.1502(a)(4) (licensed podiatrist is an acceptable medical source for impairments of the foot and ankle only).

(*Id.*).  *See* 20 C.F.R. § 404.1520c(c)(1) (explaining that the supportability factor looks to the evidence from and explanation by the opining source).  The ALJ also explained that Dr. Gardner's opinion was not consistent with the other medical records, which noted a significant disconnect between Plaintiff's allegations and her objective presentation (*Id.*).  *See* 20 C.F.R. § 404.1520c(c)(2) (explaining that the consistency factor looks to evidence from sources other than the opining source).

In the argument section of her brief, Plaintiff describes Dr. Gardner's opinion and the ALJ's related findings, but Plaintiff does not identify either a legal or factual basis for reversal (*see* Pl. Br. 28).  "To obtain judicial review, it is insufficient to simply 'suggest dissatisfaction' or merely mention an issue in the context of another matter."  *Shelton v. Colvin*, No. CIV-14-575-M, 2015 WL 5569024, at *3 n.3 (W.D. Okla. Aug. 24, 2015) (quoting *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994)).  Where a claimant's "hint of an argument fails to develop a sufficient legal or factual basis for reversal," the court "will not speculate or develop appellate arguments on her behalf."  *Id*.  Here, Plaintiff has failed to develop a sufficient factual basis for reversal.  *See U.S. v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 n.8 (10th Cir. 1997) (appellants have the burden of tying the relevant facts to their legal contentions and must provide specific reference to the record to carry the burden of proving error).  Plaintiff cannot remedy this defect by marshaling evidence in her reply brief.  *See Heaps v. Colvin*, No. 13 CV 598 PJC, 2015 WL 321222, at *8 (N.D. Okla. Jan. 26, 2015) ("In our circuit, . . . a party is too late when an issue is raised or an argument is made for the first time in a reply brief." (citing *Porter v. Colvin*, 535 Fed. App'x 760, 762–63 (10th Cir. 2013))).  As such, the court declines to speculate on Plaintiff's inadequately developed argument and finds waiver.

### 4. Dr. White

Plaintiff saw pain medicine specialist Dr. White for a consultative electrodiagnostic study of her left arm in February 2020 (Tr. 3480–81). Dr. White noted that "[p]hysical examination curiously is reported as showing decreased sensation for the left hand versus the right, but when I checked her section by section, she reported symmetry" in all fingers and all aspects of the palm and forearm (Tr. 3480). Dr. White similarly noted Plaintiff had symmetric strength in her hands and arms (*Id.*). He noted that, when asked to do a Phalen's maneuver, Plaintiff was unable to, "complaining that flexion at the wrist causes remarkable pain" (*Id.*). Nerve conduction studies were "well within normal limits" (*Id.*). Ultimately, Dr. White "d[id] not appreciate any evidence for a nerve problem that would cause [Plaintiff's] symptoms" (Tr. 3481). In a May 2020 questionnaire, Dr. White indicated that Plaintiff had chronic pain (Tr. 3503–04). Dr. White indicated that Plaintiff was "interested in doing things, but reports that she cannot" (Tr. 3503). Dr. White documented a number of vague nonspecific issues, including "[d]ifficulty concentrating or thinking" "per [Plaintiff's] report" (Tr. 3503).

The ALJ found Dr. White's May 2020 questionnaire was "vague and does not provide any significant assistance in accurately determining [Plaintiff's] functioning during the period at issue" (Tr. 19). The ALJ found his opinion lacked "concrete or quantifiable limitations" and therefore was not persuasive (*Id.*). Given the lack of specificity of Dr. White's opinion, the ALJ reasonably declined to find it was evidence relevant to the RFC assessment. *See Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 622 (10th Cir. 2020) ("[Plaintiff] identifies no inconsistency between the RFC for a limited range of light work and [various] diagnoses, nor does he explain how the diagnoses translate to any specific functional limitations that are inconsistent with the RFC. Indeed, without any specific functional limitations, there is no

obvious impact on the RFC, as the diagnoses alone do not automatically establish he was disabled.").[6]

In the argument section of her brief, Plaintiff describes Dr. White's opinion and the ALJ's related findings, but Plaintiff does not identify either a legal or factual basis for reversal (*see* Pl. Br. 28–29). As noted above, this type of deficiency cannot be remedied in reply briefing. *See Heaps*, 2015 WL 321222, at *8. The scope of the court's review is limited to the issues the claimant "adequately presents on appeal." *See Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996). The court is unable to address arguments that are insufficiently developed because the court "will not speculate on [the claimant's] behalf." *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003). Moreover, Plaintiff holds the burden of showing that reversal of the Commissioner's decision is warranted. *See Shinseki v. Sanders*, 556 U.S. 396, 409–11 (2009). Plaintiff has not met her burden. Because Plaintiff has failed to develop her arguments in a fashion that allows for meaningful review, the court finds any challenge to the ALJ's findings relating to Dr. White to be waived.

In sum, the ALJ properly applied the new standards for evaluation of medical sources and adequately articulated his reasoning consistent with those standards. Moreover, substantial evidence of record supports the ALJ's reasoning. *See Biestek*, 139 S. Ct. at 1154.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED.

---

[6] The ALJ also referenced an April 2020 note written on script pad indicating that "Melisa is unable to be gainfully employed due to ongoing health concerns" (Tr. 1797). While the signature on the script is illegible, both the ALJ and Plaintiff appear to attribute this script to Dr. White (*see* Tr. 19; Pl. Br. 29; *but see* Tr. 397 (attributing to Dr. Morrill)). Regardless of the source, this statement is not a medical opinion under the revised regulations and the ALJ accurately categorized this evidence as "inherently neither valuable or persuasive to the issue of whether [a claimant] is disabled." *See* 20 C.F.R. § 404.1520b(c)(3)(i).

Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 24 March 2022.

*[signature: Cecilia M. Romero]*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah